**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| KELLEY J. CRITTENDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-12-1101-M |
| ) | |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ACTING COMMISSIONER, SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of Defendant Commissioner's final decision denying Plaintiff's applications for benefits under the Social Security Act. This matter was referred for hearing, if necessary, and submission of findings and recommendations pursuant to 28 U.S.C. §§ 636(b)(1)(B), 636(b)(3), and Fed. R. Civ. P. 72(b). The administrative record (Tr.) has been filed, and the appeal has been fully briefed and is ready for disposition. For the reasons set forth below, the undersigned recommends the Commissioner's decision be **AFFIRMED.**

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

## I. THE ADMINISTRATIVE LAW JUDGE'S DECISION.

In a decision issued on March 23, 2012, the administrative law judge (ALJ) found that Plaintiff was not disabled under the Social Security Act and therefore not entitled to benefits. (Tr. 19-27). The ALJ found Plaintiff to have the following severe impairments: major depressive disorder, recurrent, moderate; anxiety disorder; history of breast cancer; and back pain. (Tr. 21). However, he found that none of these impairments met or equaled the criteria for any of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1. (Tr. 21-22).

Upon continuing the sequential analysis, the ALJ found Plaintiff to have the residual functional capacity (RFC) to perform a wide range of light work, described as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work . . . compromised as follows: The claimant is moderately limited in her ability to interact with the public. She is moderately limited with regard to concentration and pace and cannot perform a job requiring fast paced production.

(Tr. 23) (citations omitted).

Based upon this RFC finding, the ALJ found that Plaintiff was not capable of performing her past relevant work as a vocational nurse supervisor. (Tr. 26). However, the ALJ found that Plaintiff could perform other jobs existing in the national economy. In reaching this finding, the ALJ relied on the testimony of a vocational expert (VE) and,

2

as a framework, the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. The VE identified the following representative jobs that a person with Plaintiff's RFC and vocational factors could perform: laundry folder, light; cleaner; and price marker. (Tr. 26-27, 47).

## II. ERRORS ALLEGED ON APPEAL

In this appeal, Plaintiff alleges that the ALJ erred in two respects. First, that the ALJ failed to address the claimant's treating source statement and failed to provide sufficient reasons for his rejection of the treating source statement in its entirety. Plaintiff's Brief in Chief, 3. Second, Plaintiff contends that the ALJ failed to fulfill his statutory and regulatory duty to develop the record. *Id.*

### A. Whether the ALJ's Decision Regarding the Weight Accorded to Plaintiff's Treating Physician Satisfied the Relevant Legal Standards

In the opening paragraph of her brief with regard to this claim of error, Plaintiff makes two arguments that are easily resolved. *See* Plaintiff's Brief in Chief, 11. First, she points out that although the ALJ found that Plaintiff had the RFC for light work, he "confusingly determined" in the following paragraph that she was limited to *sedentary* work. *Id.* (citing Tr. 23). As pointed out by the Commissioner, this isolated reference to "sedentary" work is obviously a typographical error. Commissioner's Brief, 2 n. 1. Both the state agency medical consultant's RFC assessment, to which the ALJ referred in the same sentence containing the word "sedentary," and the hypothetical posed to the VE (Tr. 46-47), show that the ALJ consistently treated Plaintiff as having the RFC for "light

3

work." *Id.*; *see* 20 C.F.R. § 404.1567 (light work involves lifting no more than 20 pounds with frequent lifting or carrying of objects weighing up to 10 pounds).

Second, Plaintiff argues that the ALJ "somewhat confusingly" found that Plaintiff had marked difficulties with concentration, persistence, and pace, and later found that she was moderately limited with regard to concentration and pace." Plaintiff's Brief in Chief, 11 (citing Tr. 22-23). In making this argument, Plaintiff is obviously conflating the two separate psychological evaluation documents used in determining limitations resulting from a mental impairment: the Psychiatric Review Technique (PRT) and the Mental Residual Functional Capacity Assessment (MRFCA). On the PRT, Plaintiff's ability to maintain concentration, persistence, or pace was indeed rated as "marked," while on the MRFCA, only one of the several abilities listed in the category "Sustained Concentration and Persistence" was indicated as markedly limited: "the ability to carry out detailed instructions." (Tr. 586, 600).

However, as specifically noted by the ALJ, the PRT and the MRFCA serve different purposes. (Tr. 22-23). The PRT is used to assess mental impairments for purposes of steps two (identifying severe impairments) and three (rating severity for the listings). *See generally* 20 C.F.R. §§ 404.1520a, 416.920a. It addresses the B and C criteria of the listings for mental impairments, using four categories of limitation stated in the B criteria: restriction of activities of daily living; difficulties in maintaining social functioning; difficulties in maintaining concentration, persistence, or pace; and episodes of decompensation. *Id.* The MRFCA, on the other hand, addresses twenty specific

4

mental functions relevant to the vocational determinations required at steps four and five.

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings ... and summarized on the [PRT].

SSR 96–8p, 1996 WL 374184, at *4 (July 2, 1996). Therefore, the PRT has overall ratings for various categories, including maintaining concentration, persistence, or pace, while the MRFCA has more focused categories for use in determining a claimant's RFC.

In this case, both the PRT and the MRFCA were completed by the same medical source on the same date. (Tr. 586, 600). Further, the medical source opined in the MRFCA that Plaintiff is

> generally able to maintain concentration, persistence and pace for a normal work day and work week. However, there is moderate impairment of concentration and pace due to a combination of depression, anxiety, chronic pain and the sedative effects of her currently prescribed medications. Therefore, she would not be able to work effectively in a job setting that required fast paced production. She would, however, be able to work jobs where her responsibilities are compartmentalized and self-paced.

> The claimant's mood and concentration issues may cause difficulties with tasks involving sustained focus and complex mental demands. However, given limited public contact and allowances for occasional psychological problems affecting efficiency, the claimant remains mentally capable of

5

>understanding and carrying out simple instructions and assignments in a structured setting, in an appropriate time frame.

(Tr. 588). The ALJ incorporated these limitations—limitations associated with sustained concentration and persistence—in both his RFC and in his hypothetical question to the VE. Accordingly, the undersigned finds Plaintiff's claim that the ALJ's findings regarding concentration, persistence and pace were inconsistent to be without merit.

Plaintiff's next argument concerns the ALJ's handling of the opinion of her treating physician, Dr. Buffington. Plaintiff's Brief in Chief, 11-12. She contends that the ALJ gave little weight to Dr. Buffington's opinion that Plaintiff was limited to less than a full range of sedentary work without commenting on his objective findings or a bone density scan reflecting osteopenia. *Id.* She also faults the ALJ for relying on the opinion of a consultative mental status examiner to discredit Dr. Buffington's "restrictions and diagnosis" that Plaintiff suffers from anxiety. *Id.* at 12. Plaintiff also argues that the ALJ inaccurately characterized the consultative examiner's opinion by stating that he "declined" to diagnosis her with an anxiety disorder. *Id.* (citing Tr. 25). Plaintiff argues that Dr. Waller, the consultative examiner, actually recommended further testing to rule out generalized anxiety disorder. *Id.* (citing Tr. 583). Plaintiff concludes that the ALJ failed to follow the treating physician rule by failing to give specific legitimate reasons for "discounting in its entirety the treating source statement of Dr. Buffington." *Id* at 14.

The Commissioner responds that the ALJ did give legitimate, specific reasons for giving Dr. Buffington's opinion little weight. Commissioner's Brief, 4. For example, the

Commissioner notes that Dr. Buffington's restrictions to Plaintiff's attention, concentration, and ability to deal with work stress to be inconsistent with his own treatment and examination notes. *Id*.

The undersigned finds the ALJ's treatment of Dr. Buffington's opinion to comply with the treating physician rule. The Tenth Circuit Court of Appeals has long recognized the proper analysis and legal standards for determining the weight to be given to the opinions of treating sources. When considering the opinion of an "acceptable medical source" such as Dr. Buffington, the ALJ must first determine whether the opinion should be given "controlling weight" on the matter to which it relates. *See Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). The opinion of a treating physician must be given controlling weight if it is well supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Id.* (applying SSR 96–2p, 1996 WL 374188, at *2); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the opinion is deficient in either of these respects, it should not be given controlling weight. Even if the opinion of a treating physician is not entitled to controlling weight, however, it is still entitled to deference. The ALJ must clearly state the weight the opinion is being given, even if it is being rejected. The ALJ must specify the reasons for the weight afforded the opinion, and his reasons must be closely tied to the factors specified in the regulations. *See Watkins,* 350 F.3d at 1301. Remand is required if the ALJ does not adequately support the weight he assigned to the opinion of an acceptable medical source. As the relevant ruling explains:

7

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§] 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96–2p, 1996 WL 374188, at *4. That an opinion is not given controlling weight does not resolve the second, distinct inquiry. *See Langley v. Barnhart,* 373 F.3d 1116, 1121 (10th Cir. 2004) (holding that while absence of objective testing provided basis for denying controlling weight to treating physician's opinion, "[t]he ALJ was not entitled, however, to completely reject [it] on this basis"). This second inquiry is governed by its own set of factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Id.* at 1119. In applying these factors, the ALJ's findings must be "sufficiently specific to make clear to any subsequent reviewers the weight she gave to the treating source's medical

8

opinion and the reason for that weight." *Id.* (quotation omitted). Although an ALJ should consider all of these factors, it is not necessary that he explicitly discuss every factor. *Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007).

The ALJ gave Dr. Buffington's opinion "little weight" with regard to the restrictions he found in the medical source statement (MSS) dated January 30, 2012. (Tr. 25, 665-668). In explanation, the ALJ noted several factors. He mentioned the first visit with Dr. Buffington—who saw Plaintiff after she was referred to him for a consultative examination in connection with her application for disability benefits. (Tr. 24). The ALJ noted that in that visit, Dr. Buffington's findings were overwhelmingly negative (no palpable deformity of the lumbar spine; good, stable gait without use of assistive device; no diminished sensation in the dermatomes; oriented in all spheres; normal memory; mood and affect appropriate; normal speech and perceptions). (Tr.24). The ALJ also noted that in his MSS, Dr. Buffington imposed restrictions on Plaintiff's attention, concentration, and ability to deal with stress despite the absence of any positive findings on his previous mental status findings. (Tr. 24-25). The ALJ also noted that there were no other findings supporting those of Dr. Buffington by any other treating source. (Tr. 25).

Moreover, the ALJ discussed the opinions of the state medical consultants in great detail, noting their opinions—and the medical evidence upon which they were based—to be of great weight. The ALJ did not completely reject Dr. Buffington's opinions, and indeed included significant restrictions related to both Plaintiff's physical

9

and mental limitations to the extent they were supported by the medical evidence. Contrary to Plaintiff's assertions, the undersigned finds that the ALJ properly applied the treating physician rule and gave specific and legitimate reasons for the weight he assigned to the MSS of Dr. Buffington. As long as the proper legal standards are applied, the ALJ is the one who must weigh the evidence—not the reviewing court. In light of the above, it is recommended that Plaintiff's first claim of error be rejected.

### B. Duty to Develop the Record

Second, Plaintiff contends that the ALJ erred in refusing to conduct a supplemental hearing so that the VE could be asked about Dr. Buffington's January 2012 MSS. Plaintiff's Brief in Chief, 15. (citing Tr. 148).

The Commissioner responds that the ALJ has no duty to further develop the record when the record contains sufficient evidence upon which the ALJ may make an informed decision. Commissioner's Brief, 8 (citing *Diaz v. Sec'y Health and Human Svcs.,* 898 F.2d 774, 778 (10th Cir. 1990)). The Commissioner notes that Plaintiff was represented by an attorney, and that the ALJ is not required to be an advocate for her. *Id.* at 9. Most importantly, the Commissioner notes that the ALJ did not adopt the restrictions contained in the later-obtained MSS of Dr. Buffington. *Id.* Accordingly, even if a supplemental hearing had been conducted, a hypothetical to the VE based on the MSS would not have changed the result, as a hypothetical need only contain the restrictions contained in the ALJ's RFC finding. Accordingly, there is no merit to Plaintiff's second claim of error.

## RECOMMENDATION

Having reviewed the evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **AFFIRMED.**

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. See 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **June 25, 2014**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on June 11, 2014.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE